May it please the court, Eliza Ibarra, Assistant Arizona Attorney General, representing David Shinn, et al. I'd like to recognize that the victims are watching this proceeding remotely, just as I would if this were an in-person proceeding. I'd like to reserve two minutes for rebuttal. Jessup received a life without parole sentence, not because Arizona law dictated such a sentence, but because his sentencer, after taking his youth into account, found that life without parole was the most appropriate sentence in light of his crimes. Consistent with Miller's requirements, the court conducted an individualized sentencing hearing that took into account Dr. Katie's expert testimony that Jessup might change as he matured, Jessup's specific background and history, Jessup's family's testimony, and the expert report that itself had relied on seven inches of material, a stack of seven inches, about Jessup. The entire sentencing was about whether Jessup should receive life without parole or a parole eligible sentence. However, because Jessup personally kidnapped, threatened, shot, and killed the victim after forcing him to contemplate his impending death for half an hour, the court ultimately found that a life without parole sentence was more appropriate. The sentencing hearing was not an empty exercise. The court did not impose Jessup's sentence by default because it was the only option available, like they did in Miller. Instead, the court made a meaningful choice between two options. It made an individualized determination of Jessup's background while taking into account his youth and attendant characteristics. His sentence was therefore fully consistent with Miller. So are you arguing about harmless error? I think that the court could get there several different ways. But if you want to say that any error was harmless, that's definitely true. I don't think Jessup has ever explained what he would get out of resentencing that he hasn't already received. For the second time, a court would consider between parole eligibility and a life without parole sentence. And in either case, it would remain true that there was an implementation problem regarding Because it seems like your friend on the other side is arguing that you waived any harmless error argument. So I was just trying to figure out if that is the case. And how does harmless error apply to the Miller violations? That's why I was asking. Oh, sure. I don't believe that we waived any harmless error argument. In our opening brief, we argued that any error would be harmless. And we said that Jessup has failed to show prejudice. And when we quoted Brecht, we equated prejudice with substantial and injurious effect. So when we argued that Jessup failed to show prejudice, we implicitly argued that he had failed to show a substantial and injurious effect. And Jessup had all of the information there to come up with an answer to that point. And he didn't. And I don't think there is an answer to that point, quite frankly. So I'd like to ask you something else if the Chief is finished with those questions. Thank you. If we were to agree with your position, what is the appropriate tagline? Are there other claims that remain pending at the District Court? If so, what would happen to those? I don't believe that any other claims remain pending at the District Court. Before, there was an issue about whether the Montgomery sort of wrinkle had been satisfied. Whether the Court had considered sufficiently Jessup's age and immaturity before finding him irreparably corrupt. But after Jones, we know that that doesn't matter anymore. So I think if this Court agrees, it should reverse and direct that Jessup's habeas petition be dismissed with prejudice. Because Jessup's sentence complied with the important part of Miller, that the sentencer take into account his youth and immaturity, the Court of Appeals appropriately found that his sentence was Miller compliant. How do we interpret the Arizona Court of Appeals statement that Jessup's sentence was not mandatory? What's your rationale for the Arizona Court of Appeals statement there? Well, I think that the Supreme Court has not decided at what point you have to look at the issue. And so I think it's fair to say that the Arizona Court of Appeals appears to have been considering the issue over a span of years and taking into account Section 13716, which implemented parole for juvenile offenders. Oh, and since the Supreme Court has not clearly decided what the appropriate time is, that means that it can't be contrary to clearly established federal constitutional law and that habeas relief is inappropriate. So we don't look at the law at the time? I'm trying to figure out why the developments like the passage of the Arizona 13-17 and 13-718A make a difference to our analysis of the sentencing from decades ago. It's because we know that for sure, if Jessup's sentencer had chosen the parole eligible sentence, that sentence would be enforced. And we also know that even if this court thought that the parole eligible sentence was an illegal sentence, it still would be enforced under CHPARO because Arizona regularly enforces illegally lenient sentences that the state does not appeal. So there's no real question that if the court had chosen a parole eligible sentence, Jessup would now be serving a parole eligible sentence. And if you look at the addendum in my opening brief, it lists at least 11 other defendants that were contemporaneous with Jessup who received a life with the possibility of parole sentence while parole was outlawed and they are currently eligible for parole. It also lists 17 other defendants who at the time were sentenced and their sentence said specifically life with the possibility of release and they're also all eligible for parole due to 716. So because there was no real risk that Jessup's life with the possibility of parole sentence would not have been enforced had it been chosen, the Arizona Court of Appeals appropriately found that there was no Miller violation. Counsel, could I ask you one more question? The plea agreement at ER 157, I believe it is, specifies that the sentencing obligation, excuse me, options available to the court for the murder in the first degree were life with no possibility of parole, natural life sentence that imprints, or life imprisonment with parole eligibility after 25 years of incarceration and the court approved that. So how, if at all, does that affect our analysis of whether it was mandatory? Well, we know that the court did not believe it was mandatory. We know that the parties did not believe it was mandatory. If you look at the party's arguments at sentencing and their sentencing memoranda, I think that's perfectly clear. And you also know, I discovered this as I was reading back through the record, that the Arizona Supreme Court case Wagner came out less than a month before Jessup was sentenced. And I cite that case in my reply. And Wagner specifically says that Arizona's state statutes state with clarity that the punishment for committing first degree murder is either death, natural life, or life imprisonment with a possibility of parole. And so after the state affirmatively brought that to the superior court's attention, the court actually specifically noted during sentencing that it was considering Wagner when it sentenced him. So there was absolutely no reason to doubt the sentencer's genuine belief in the availability of that sentence. And Jessup has never disputed his genuine belief in that sentence. I see I'm almost out of time, so I'll reserve the remainder of my time for rebuttal. Thank you. Counsel, please state your appearance. Good morning, your honors. May it please the court. My name is Keith Hilzendegger. I'm with the Federal Public Defender's Office, and I represent the petitioner in this case, Michael Jessup. Quickly, Judge Graber, I'd like to answer your question about what's still pending in the district court. There is one case that has been reopened to present this Miller challenge to a life without parole sentence because the Maricopa County Superior Court allowed the state to renege on a stipulation to resentencing. And there is another case involving the same kind of reneging on a stipulation where a magistrate judge has recommended reopening the petition. So there's still active litigation in the district court that involves this. Is that under the same case number? The reason I'm asking that is, again, hypothetically, if we were to agree with the state's position and reverse, we would have to figure out what to say about whether the whole thing is dismissed or whether only this piece of it is vacated, and I really don't think that should happen, but if it did, is it in the same matter? Oh, I see what you're saying. There's only one claim in this petition, which is the Miller claim. So I mean, that's okay. Because I had the sense that there were other things going on. Sorry, I didn't quite understand what you were asking. What I would like to focus on first is the mandatory nature of Arizona's statutory sentencing scheme at the time Mr. Jessup was sentenced. The statutory scheme was plain. The judge had the discretion to impose a sentence that either did or did not carry the possibility of release. And Ms. Wilson is correct in reading the statute to say that release does not include any basis like parole or commutation or work release. But the judge can't stop at the sentencing statute. The judge has to look at the entire code, and the judge would know that, well, there's not going to be any release on parole anyway because parole had been abolished. Now whether or not the scheme was mandatory in the sense that Miller requires is not a question of state law. It's a question of federal constitutional law. And so the statement in any court, you know, the last reason decision of the state courts that say that it's mandatory, that is not a characterization of state law. That is a ruling on a question of federal law that this court can easily look at state law and decide whether that is contrary to what federal law requires just as any habeas court would. And here, the discretion, Judge Baker? Didn't the judge do exactly what the Supreme Court has suggested it should do? This was no cursory work of age and maturity. There were expert opinions and expert opinion. There was considerable discussion by the trial court in consideration of chronological age, emotional age, and other factors that could have been in mitigation. What else would be different had the, if it went back again, what would be different? If it went back again for resentencing, the judge would have the discretion to make him parole eligible rather than simply eligible for commutation. Or he will be when he's served 25 years. Under Arizona law, if he had received the parole eligible sentence, he would in fact be eligible for parole. But that is not the discretion that the sentencing judge exercised. The sentencing judge exercised only the discretion to make him eligible for commutation. Well, that's not what Wagner says. Let me respond to the state's assertion about how the Arizona Supreme Court interprets its own statute, which you say means one thing and that court seems to say means something else. Wagner says that there's no, there are no standards that guide the decision to impose a sentence that does or does not carry the possibility of rubies. That's not my question. If the court referred to it as an option for parole, how can we say that the statute doesn't mean there's an option for parole, it means only that there's an option for gubernatoriality? That's what I'm getting at. That seems to be a question of statutory interpretation as to what release means. Well, we know what release means because the Arizona Supreme Court in the Chaparra decision said that it doesn't mean parole. And we know that it means executive clemency because the Arizona Supreme Court in the Lynch case said that it means executive clemency.  Wagner, the way that you balance it with Wagner is this. Trial judges are presumed to know the law and apply it in making their decisions. And so here, when the judge said parole, against the backdrop of state law, he must have been referring to whatever eventual release was available under Arizona law. And that could only have meant commutation. So if you read the old statute, the 1998 statute, it doesn't use release in that sense. It says, in order of sentencing the defendant to natural life is not subject to commutation or parole, work furlough, or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis, which I read to mean any of those previously stated basis, until 25 years. So it seems to me that if you read it contextually, the shall not be released on any basis just refers back to that whole long list, which includes parole. So why isn't Wagner a permissible interpretation even in light of those other statutes? This particular statute doesn't say release. It's contextually different from that. Because parole doesn't exist. The legislature forgot to amend that statute when it abolished parole. And it doesn't make any sense to read that statute in isolation without taking into consideration the fact that parole had been abolished for anyone sentenced after January 1st, 1994. Yes, the statute says parole is a form of release, but it's not a form of release that existed in state law at the time. So, why, so is this harmless error then? Do we do a harmless error analysis here, or why not? The error is not harmless because Mr. Jessup was entitled to be sentenced by a judge who had the discretion to make him eligible for parole, not eligible for commutation. But what's his prejudice? I mean, since everything that's happened under Arizona law, what's his prejudice? What is the prejudice? Well, he never got what Miller says he was entitled to. So, he got for resentencing. How do you say that? How is he not getting what Miller said he's entitled to? The judge, having heard the evidence that Mr. Jessup was capable of rehabilitation, only had the power to use that information to say that someday down the road the governor might allow him to be freed. The judge did not have the discretion to say someday down the road we will let a board of professionals look at your record and see whether you actually have been rehabilitated, and if you have, allow you to be released from prison. Those, that is a constitutionally significant difference between a sentence that allows only for the remote possibility of commutation as opposed to the definite possibility of parole. And that is the harm that Mr. Jessup has suffered that can only be rectified by affirming the grant of his habeas petition. So, if there are no further questions, I'll ask the court to affirm. Thank you. Nancy Barr, I'll give you a minute. Thank you. If the court would have chosen a parole eligible sentence, Jessup would now be eligible for parole. And the clearest case that makes this so obvious is listed in my addendum, and it's called State v. Bassett. And it's on page 62 and 64. In Bassett, that defendant committed two murders. And for one, he received life without the possibility of parole. And for the other, he received life with the possibility of release. And now he's eligible for parole. If that sentence wasn't available, then how can you possibly explain those two sentences? I think that there are no remaining issues in the case, because we know that irreparable corruption is not constitutionally required. So if this court chooses to affirm, as we believe it should, we also ask that it simply deny and dismiss Jessup's petition with prejudice. Thank you. You said affirm. I assume you meant reverse? Oh, I apologize. I do mean reverse. Sorry, usually I represent the defendants. Thank you. Thank you. Thank you both. Very grateful for your arguments here today. The case of Michael Paul Jessup v. David Shinn is now submitted.
judges: MURGUIA, GRABER, Fitzwater